## Commonwealth, by Meredith, Atty. Gen., v. Hardin.

March 21, 1941.

Hannah, Van Sant & McKenzie and T. E. Nickel for appellant.

Woods, Stewart & Nickell, S. S. Willis and John F. Coldiron for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

By this quo warranto proceeding appellant sought to vacate the office of member of the Greenup County Board of Education, to which appellee had been duly elected on November 8, 1938. As grounds for the relief sought, the appellant, in its original petition charged that at the time of the election and continuously thereafter, the appellee was directly or indirectly interested in a claim against the Board; and in an amended petition, .alleged that on March 2, 1940, at a meeting of the Board, the appellee moved that the claim be included in the "Debt Service Section" of the budget for the school year 1940-1941. Compelled to elect between the causes of action thus set forth, appellant chose to prosecute that alleged in the amended petition; but, on final. submission, the Court rescinded its order requiring an election, considered both grounds, adjudged that neither existed, and dismissed the petition. This appeal followed.

The uncontradicted testimony showed that prior to his candidacy, the appellee had been engaged with his son, K. C. Hardin, in selling trucks for the International Harvester Company, and on September 13, 1937, had sold a school bus to the Board and accepted its note for $1,335.94 secured by chattel mortgage in part payment. He and his son were equal partners, although the note was payable to appellee individually and subsequently was indorsed by him and pledged with a bank in Ohio as security for a loan. During, or perhaps prior to appellee's candidacy, the partnership was dissolved, and on October 29, 1938, the note and mortgage were transferred by indorsement to the son who thereafter instituted suit thereon against the Board. Both the father and son testified that although appellee's indorsement on the note was unrestricted, it was nevertheless agreed as part of the partnership settlement that neither party should be liable to the other in the event any account or note transferred to either should prove uncollectible, and that as a result of the settlement the appellee relin-

quished all interest in the note, which thus became the sole property of the son without right of recourse on the father. A letter from the International Harvester Company, dated September 28, 1938, addressed to W. F. Hardin & Son, was introduced in evidence, and, in this letter, the Company acknowledged receipt of a letter from the addressees under date of September 21st, surrendering the dealer's contract under which appellee had operated. The letter also expressed the hope that a contract could be negotiated between the Company and the son, K. C. Hardin, and this appears to have been subsequently accomplished. While in some respects unsatisfactory, this testimony, as above stated, was uncontradicted, and moreover, was corroborated by another son of the appellee who had kept the books of the partnership. Unimpeached, it must necessarily be accepted as establishing that appellee had no interest in the note at the time he became a member of the Board of Education.

The charge contained in the amended petition is based upon the fact that at a meeting of the Board on March 2, 1940, after numerous accounts had been ordered paid, appellee moved that certain claims, shown to be debts which could not be paid out of the revenues for the current fiscal year, be included in the "Debt Service Section" of the budget for the year 1940-1941 and given preference, and that among the claims listed appeared the item "W. F. Hardin note for bus purchase September 13, 1937,—$1335.94." Conceding that the verity of the minutes cannot be questioned in the absence of fraud or mistake, there is nothing in them which contradicts the admitted fact that long prior to the meeting appellee had indorsed and delivered the note to his son, whose suit against the Board to collect thereon was then pending. Aside from this, a reading of the minutes should be sufficient to convince an impartial mind that no significance should be attached to the use of appellee's name in designating the claim referred to. He was the payee of the note which the Board had executed and its records doubtless reflected this fact. Presumably, the claims included in the motion referred to were taken from the auditor's report which was doubtless prepared from the Board's records. In any event, the recitation in the minutes cannot change the admitted fact that prior to the meeting the legal title to the note

had vested in the son, of which fact, the Board was fully apprised by the suit then pending. If, as established by the uncontradicted testimony, appellee had parted with all interest in the note prior to his election, he could not have been guilty of the offense charged in the amended petition.

Both the original and the amended petitions were predicated upon an alleged violation by appellant of Kentucky Statutes, Section 4399-22, which provides in substance that no person shall be eligible to the office in question who, at the time of his election, is directly or indirectly interested in the sale to the Board of supplies, materials, or services, and that if, after election, any member becomes interested in a contract or claim against the Board, he should forfeit his office. Obviously, if appellee relinquished all interest in the note to his son prior to November 8, 1938, he did not violate the Statute, and the judgment dismissing the petition was proper. It is contended, however, by appellant that irrespective of any fact shown by competent testimony, the appellee was necessarily interested in the payment of the note at and subsequent to the date of his election, because his indorsement thereon transferring it to his son rendered him liable to the son in the event of its nonpayment by the Board. In support of this contention it is argued that the testimony of the son that he had agreed not to look to the father for the payment of the note in any event is ineffective, because of the rule announced in the case of Tross v. Bills' Executrix, 189 Ky. 115, 224 S .W. 660, and many times followed, that in the absence of a plea of fraud or mistake, parole evidence is not admissible to contradict an unambiguous and unqualified indorsement on a promissory note. But this rule is applicable to controversies between parties to the instrument or their privies. Clearly, it has no application to the facts in issue in the case at bar. Gannon v. Bronston, 246 Ky. 612, 55 S. W. (2d) 358.

The fact that appellee discontinued his agency contract for the sale of trucks on the eve of his candidacy; the nonproduction of records pertaining to the dissolution of the partnership between him and his son, and the resumption or the taking over of the business by the latter, inevitably, though, perhaps, unjustly, create the suspicion that appellee retained an interest in the collection of the note which had been executed to him by the

Board of Education; but neither appellee's reputation, nor that of his son, was impeached, and presumably the Chancellor was competent to judge the weight which should be accorded their testimony. He accepted it as true; it established without contradiction that appellee had no interest in the note at the time of his election, and acquired none thereafter. Accordingly, we have no alternative but to affirm the judgment.

Judgment affirmed.